IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,

v.

THADDEUS THOMAS CRUMBLEY,
Defendant.

CRIMINAL DIVISION

CC No.: 2012 02820

THE HONORABLE BETH LAZZARA

**DEFENDANT'S RESPONSE TO COMMONWEALTH'S MOTION IN LIMINE FILED MAY 25, 2012**

Filed on Behalf of Defendant:

Thaddeus Thomas Crumbley

Counsel of Record for this Party:

Wendy L. Williams
PA ID# 50379

Wendy L. Williams & Associates
The Frick Building, Suite 417
437 Grant Street
Pittsburgh, PA 15219

(412) 434-5757
(412) 434-5787 facsimile
wendy.williams.law@gmail.com

FILED
2012 JUN -8 PM 2: 21
DEPT. OF COURT RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY PA

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA, CRIMINAL DIVISION

v. CC No.: 2012 02820

THADDEUS THOMAS CRUMBLEY, Defendant. THE HONORABLE BETH LAZZARA

**DEFENDANT'S RESPONSE TO COMMONWEALTH'S MOTION IN LIMINE FILED MAY 25, 2012**

AND NOW comes Thaddeus Thomas Crumbley, by and through his attorney Wendy Williams, and sets forth the following:

The Commonwealth seeks a pre-trial ruling on the admissibility of a statement by Anthony Snyder who purportedly had a conversation with Mr. Mattox, the victim in this case, wherein Mattox purportedly stated that he was going to meet "Matt Matt" who allegedly is the same as Mr. Ebo, co-conspirator in the case at bar. The Commonwealth contends that said statement, despite being hearsay, is admissible pursuant to Pa.R.E. 803(3), which states:

> The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (3) Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health. A statement of memory or belief offered to prove the fact remembered or believed is included in this exception only if it relates to the execution, revocation, identification, or terms of declarant's will.

The Commonwealth errs.

"Hearsay is presumptively untrustworthy because the out-of-court declarant cannot be cross-examined immediately as to any inaccuracy or ambiguity in his or her statement." Glen Weissenberger, Hearsay Puzzles: An Essay on Federal Evidence Rule 803(3), 64 Temple L.Rev.

145 (1991). In criminal trials, hearsay evidence directly conflicts with the constitutional guarantees embodied in the Confrontation Clause of the Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution.

Defendant recognizes that some courts, as cited by the Commonwealth, have permitted introduction under Rule 803(3) of an unavailable declarant's hearsay statement that he or she was going to meet the defendant, following which some type of crime occurred to the declarant that is being pinned on the defendant. However, Defendant respectfully suggests that this Court not follow this line of precedent. Rather, Defendant contends that compliance with the historic concerns with the introduction of hearsay evidence as well as a defendant's constitutional rights to confrontation, jeopardized by the admission of an unavailable witness's statement, requires a more nuanced approach to Rule 803(3) than that offered by the Government.

Specifically, Defendant asserts that under Rule 803(3) a declaration of intention is admissible to prove only the declarant's future conduct, and not (as had been allowed, prior to the adoption of the Federal Rules of Evidence, under the doctrine set forth in Mutual Life Insurance Co. v. Hillmon, 145 U.S. 285, 295-300 (1892)) to prove the future conduct of another person. See Camm v. State, 908 N.E.2d 215 (Ind. 2009) (holding that, while state-of-mind declarations are admissible under Rule 803(3) when offered to prove or explain acts or conduct of the declarant, they are not admissible when offered to prove a third party's conduct.) In other words, because the Commonwealth is really trying to show that Mr. Ebo was present at the scene of the crime, not simply that the declarant/victim was at the scene of the crime, the hearsay falls outside the limited parameters of Rule 803(3).

This more restrictive approach is not unprecedented. See People v. Alcalde, 148 P.2d 627, 633 (Cal. 1944) (Traynor, J., dissenting) ("A declaration as to what one person intended to

do, however, cannot safely be accepted as evidence of what another probably did."); House Committee on the Judiciary, Federal Rules of Evidence, H.R.Rep. No. 650, 93d Cong., 1st Sess. 13, reprinted in, 28 U.S.C.A. Fed.R.Evid. 803 Historical Note (state-of-mind exception to federal hearsay rule intended to allow hearsay going to declarant's state of mind "only to prove his future conduct, not the future conduct of another person"); Maguire, The Hillmon Case — Thirty-three Years After, 38 Harv.L.Rev., 709, 717 (1925) ("It is not customary to accept one man's extrajudicial assertions as evidence of another's mental state.") See generally 4 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 803(3)[04] at 803-119 (favoring "flexible" approach where declarant states intention to act jointly with party whose subsequent actions are at issue, but noting that "the judiciary has been extremely circumspect about relying on [the federal state-of-mind exception] when the action of a person other than the declarant is involved.").

The court in Clark v. United States, 412 A.2d 21 (D.C. App. 1980) explained:

> As previously noted, the state-of-mind exception to the hearsay rule permits the introduction of a person's out-of-court declarations of future intent to perform an act, to show that the act actually was performed. See United States v. Brown, supra 160 U.S.App.D.C. at 194, 490 F.2d at 762. Hillmon, supra, is the seminal case illustrating this subcategory of the state-of-mind exception. . . . in Hillmon, the Supreme Court held that letters were properly admissible as evidence that Walters "had the intention of going, and of going with Hillmon, which made it more probable both that he did go and that he went with Hillmon. ..." Id., 145 U.S. at 296, 12 S.Ct. at 913 (emphasis added). Thus, under Hillmon, the declarant's statement of future intent was admissible for two purposes, to prove: (1) that the declarant went to the place indicated by his statement of intention, and (2) that the declarant went there with the other named party. It is well-settled that the declarant's statement of future intent to perform an act is admissible to show that the declarant did perform the act, if the performance of the act is at issue. See, e. g., United States v. Brown, supra, 160 U.S.App.D.C. at 194, 490 F.2d at 762. However, the question of whether the declarant's intention to perform an act is admissible to show another person's performance of an act, pursuant to the second prong of Hillmon, has been the subject of considerable controversy. Compare Mutual Life Insurance Co. v. Hillmon, supra and People v. Alcalde, supra, with Throckmorton v. Holt, 180 U.S. 552, 573-74, 21 S.Ct. 474, 482-83, 45 L.Ed. 663 (1901); United States v. Brown, supra, 160 U.S.App.D.C. at 203 n.42, 490 F.2d at 771 n.42; People v. Alcalde,

supra (Traynor, J., dissenting); People v. Gress, 107 Cal. 461, 40 P. 752 (1895); State v. Perelli, supra, 125 Conn. at 324-25, 5 A.2d at 707; State v. Farnam, 82 Or. 211, 250-53, 161 P. 417, 429-30 (1916) (en banc) (Harris, J., concurring); and id. at 258-75, 161 P. at 431-36 (Burnett, J., dissenting). See, e.g., United States v. Pheaster, 544 F.2d 353, 379-80 (9th Cir. 1976), cert. denied sub nom. Inciso v. United States, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); Hinton, States of Mind and the Hearsay Rule, 1 U.Chi.L.Rev. 394, 403-23 (1934); and Maguire, The Hillmon Case — Thirty-three Years After, 38 Harv.L. Rev. 709 (1925). Also, see generally Seligman, An Exception to the Hearsay Rule, 26 Harv.L.Rev. 146 (1912); Hutchins and Slesinger, Some Observations on the Law of Evidence — State of Mind to Prove an Act, 38 Yale L.J. 283 (1929); and Annot., 113 A.L.R. 268 (1938).

The validity of the second prong of Hillmon has been seriously questioned due to the prejudice to the defendant that results from the departure from traditional state-of-mind concepts. For example, the House Report accompanying Fed.R.Evid. 803(3), which sets forth the federal state-of-mind exception, states that the Hillmon doctrine is limited to include statements of intent by the declarant only to prove his future conduct, not the anticipated conduct of another person. H.R.Rep.No. 93-650, 93d Cong., 2d Sess., reprinted in [1974] U.S.Code Cong. & Admin.News, pp. 7075, 7087. . . .

The logic of Justice Traynor's dissent in People v. Alcalde is as persuasive today as when it was first written:

> Such a declaration could not be admitted without the risk that the jury would conclude that it intended to prove the act of the defendant as well as of the declarant, and it is clear that the prosecution used the declaration to that end. There is no dispute as to the identity of the deceased or as to where she was at the time of her death. Since the evidence is overwhelming as to who the deceased was and where she was when she met her death, no legitimate purpose could be served by admitting her declarations of what she intended to do .... The only purpose that could be served by admitting such declarations would be to induce the belief that the defendant went out with the deceased, took her to the scene of the crime and there murdered her. Her declarations cannot be admitted for that purpose without setting aside the rule against hearsay. [Id., 24 Cal.2d at 183, 148 P.2d at 633.]

Clearly, to admit such evidence where the victim's intentions are irrelevant violates one of the fundamental concepts of the state-of-mind exception: that the declarant's own state of mind be relevant to a material issue in the case.

Accordingly, we reject the second contention of the government and find that it was error to admit the testimony of Mr. William Brown with respect to the

> decedent's intention of meeting the appellant at Federal City College on the morning of her death.

Id. at 29-30.

Admitting statements under Rule 803(3) as proof of the declarant's subsequent action in compliance with the state of mind is a more problematic category of Rule 803(3) hearsay than other permissible uses. The special reliability implicit in the other forms of statements is often less in this category because "it is significantly less likely that a declared intention will be carried out than it is that a declared state of mind is actually held." 2 John W. Strong, McCormick on Evidence § 275 at 234. For example, in a murder prosecution, a defendant's statements that he planned on killing the victim is stronger evidence of the defendant's malice toward the victim than that the defendant actually committed the murder. See 2 John W. Strong, McCormick on Evidence § 275 at 234.

Another instructive case is State v. Krone, 897 P.2d 621, 625-26 (Ariz. 1995), in which a bar employee stated that the victim said she did not need help closing the bar because "she would be fine, ... Ray [the defendant] was gonna close with her.... That he was gonna close with her. He was gonna come down that night." The state presumably offered this evidence as tending to prove the victim's state of mind — that she intended to stay at the bar until closing. It was admissible for that purpose under the state of mind exception to the hearsay rule. Ariz.R.Evid. 803(3). However, Judge Feldman, in a concurrence (the majority opinion did not address the evidentiary question), wrote:

> The evidence, however, not only tended to prove that the victim intended to stay at the bar but also could be used as evidence to show the conduct of "Ray," presumably referring to Defendant. When used to prove Ray's intent or conduct, however, the evidence is not a statement of the declarant's state of mind but merely the declarant's statement of her expectation of Ray's future conduct. Further, the statement lacked any foundation about the basis for that expectation. Did the victim expect Ray because of something he said, something someone else

> said, some speculation on her part, or because Ray looked furtively at her the night before? We do not know and she did not say.
>
> Standing alone, the statement more closely resembles a declaration of the victim's belief admitted to prove the fact believed — that someone named "Ray" was "gonna come down that night" — a use that Rule 803(3) specifically prohibits.
>
> Thus, use of the coworker's testimony to prove Ray's conduct is questionable under the hearsay rule. . . . See JOHN W. STRONG ET AL., 2 McCORMICK ON EVIDENCE § 275, at 236-37 (4th ed. 1992) (noting that the "danger of unreliability" with such statements has "prompted some courts to impose additional limitations, restrictions, or requirements"); see also State v. Engweiler, 118 Or. App. 132, 846 P.2d 1163, 1164-65 (1993) (holding that "statements by a declarant are admissible under 803(3) only to prove the declarant's future conduct, not the future conduct of another"); State v. Wetzel, 868 P.2d 64, 69 (Utah 1993) (stating that "limiting instructions are a per se requirement"); United States v. Cicale, 691 F.2d 95, 104 (2d. Cir.1982) (approving admission because other evidence showed defendant's involvement and because "the statements [were] supported by a ring of reliability").

Also instructive is the case of In People v. Franklin,782 P.2d 1202, 1206 (Colo. Ct. App. 1989), in which a shooting took place at a party. Considerable drinking was going on and several altercations with racial overtones took place, some of which involved the victim, a black man. The victim and a white woman, both drunk, were involved in one of the arguments. The defendant, a white man, was not involved in that argument, but he had complained about the presence of blacks at the party. Later, as the victim and a friend were leaving, an argument ensued between the victim and the same woman he had argued with earlier that evening. The woman was screaming racial epithets as her husband restrained her by the arms. The defendant was watching the confrontation while leaning against his truck parked in the driveway. The defendant then said, "I'll take care of this," and shot a pistol three times, fatally wounding the victim. The victim's friend ran away, but returned when he heard the victim saying he'd been shot. He confronted the defendant saying, "You shot Mike." The defendant said, "Yeah, and you're next." The victim's friend started to run again as the defendant attempted to shoot him;

however, the gun jammed as he tried to fire it. As defendant unloaded the weapon, shell casings dropped to the ground. A prosecution witness who was also at the party testified that, just before the shooting, he tried to follow the victim out the front door but was prevented from doing so by an "unnamed man" who had been seen talking to defendant on several occasions throughout the evening. The unknown declarant told the witness, "Now is not a good time to go out," then counted off three shots as they were fired saying, "That's three, three more to go." The defendant contended that the above quoted statements of the unknown declarant were hearsay and the trial court erred in admitting them. The appellate court agreed. The People argued that the testimony was not hearsay because it was not offered to prove the truth of the matter asserted— that it was not a good time for the witness to go outside. Rather, they contended the statements were offered to show prior knowledge on the declarant's part as evidence of deliberation by the defendant. However, the court reasoned that in reality, what was being communicated, the declarant was in essence, saying, "Now is not a good time to go out because the defendant is going to shoot someone and I know this because he told me...." Indeed, just such a characterization of the remarks was argued to the jury by the People. Therefore, because the matter asserted was evidence of deliberation on the part of the defendant, and because the declarant's statements were offered to prove the truth of the matter asserted, the statements were hearsay. The court concluded that the statements are not admissible under CRE 803(3), the state of mind exception to the hearsay rule. Under that exception, assertions about the declarant's state of mind are admissible to prove the truth of the matter asserted, but such statements are not admissible to show the state of mind of another, here the defendant. Therefore, the court held that the declarant's statements were inadmissible under any of the applicable exceptions to the hearsay rule.

States have recognized the dangers of allowing statements in under Rule 803(3) to show that a third party – usually the suspect – acted in accordance with the unavailable declarant's intention, and have made changes to their rules of evidence to ensure that Rule 803(3) is not interpreted to allow hearsay that would show the intentions of a non-declarant. See e.g. Fla. Stat. Ann. § 90.803(3) ("A statement of the declarant's then-existing state of mind, emotion, or physical sensation, including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health, when such evidence is offered to: . . . 2. Prove or explain acts of subsequent conduct of the declarant."); Md. R. Evid. 5-803(b)(3) ("Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant's then existing condition or the declarant's future action, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."); Alaska R. Evid. 803(3) ("The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . (3) Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health) offered to prove the declarant's present condition or future action, but not including a statement of memory or belief to prove the fact remembered or believed . . .") Cal. Evid. Code § 1250 ("1250. (a) Subject to Section 1252, evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) is not made inadmissible by the hearsay rule when: (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other

time when it is itself an issue in the action; or (2) The evidence is offered to prove or explain acts or conduct of the declarant. (b) This section does not make admissible evidence of a statement of memory or belief to prove the fact remembered or believed."); La. Code Evid. art.803(3) ("Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant's then existing condition or his future action. A statement of memory or belief, however, is not admissible to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's testament.")

It may be argued by the Commonwealth that a limiting instruction will ensure that the jury will properly consider the proposed evidence and consider it only as to the declarant's intention. The most widely quoted language on this subject is Justice Cardoza's eloquent dictum in Shepard v. United States, 290 U.S. 96 (1933). There, Shepard was accused of murdering his wife with poison. The defense maintained that Mrs. Shepard's death was a suicide. The government sought to admit the following statement by the wife: "Dr. Shepard has poisoned me." On appeal, the government argued that this statement was admissible not to show that Dr. Shepard did, in fact, poison his wife, but merely to show that Mrs. Shepard thought he did. Since Mrs. Shepard thought she had been poisoned, the government said, she probably was not thinking in suicidal terms at the time of her death. The Court held the statement inadmissible on that theory, since the jury had not been instructed on the theory at trial. The Court then strongly suggested that not even a limiting instruction would have rendered the statement admissible as evidence of Mrs. Shepard's state of mind:

> It will not do to say that the jury might accept the declarations for any light that they may cast upon the existence of a vital urge, and reject them to the extent that

> they charged the death of some one else. Discrimination so subtle is a feat beyond the compass of ordinary minds. The reverberating clang of those accusatory words would drown all weaker sounds. It is for ordinary minds, and not for psychoanalysts, that our rules of evidence are framed. They have their source very often in considerations of administrative convenience, of practical expediency, and not in rules of logic. When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out.

Id. at 104. This reasoning was adopted in United States v. Kaplan, 510 F.2d 606 (2d Cir.1974) where the defendant was convicted of unlawful possession and distribution of heroin. The Government's case "depended almost entirely upon the testimony of a single narcotics agent," who testified extensively about his relationship with a third party, Lange, and especially about a meeting between himself, Lange, and defendant, at which the agent purchased narcotics from defendant. Id. at 607-08. At trial, the agent described a telephone conversation the day before the meeting in which Lange stated that "his connection [Kaplan] would be there with him." Id. at 608. The account of the telephone conversation was admitted, over objection, "but only for the purpose of explaining [the agent's] `state of mind' . . . ." Id. The trial judge carefully admonished the jury to that effect. Nonetheless, the appellate court reversed, finding that it was impossible for the jury to limit the evidence to this proper purpose. The jury would certainly conclude not only that the agent believed Kaplan was Lange's connection, but also that Kaplan was in fact Lange's connection — an impermissible use of the evidence. The court then stated:

> It is sound doctrine, to be sure, that juries must be supposed usually to be able and determined to follow instructions. . . But there are limits upon the powers of jurors — or judges or anyone — to keep interconnected thoughts separated from each other. . . . The effort in this case must be deemed to have exceeded those limits because the "authorized" use of the evidence shaded so closely and uncontrollably into the forbidden. . . .

Id. at 611.

The Shepard decision was also the basis for Justice Traynor's dissent in People v. Alcalde, 148 P.2d 627 (Cal. 1944). There, Frank Alcalde was charged with the murder of his

friend, Bernice Curtis. The government sought to admit the victim's statement, prior to the killing, that she was going out with Frank. The California Supreme Court held the statement admissible for the limited purpose of showing that Bernice intended to be with Frank on that evening in question. In his vigorous dissent from the majority opinion, Justice Traynor argued that, while Bernice's statement was good evidence only that she intended to go out with Frank, the jury would inevitably and impermissibly accept the evidence as proof that Frank intended to go out with her. Justice Traynor thus objected to the admission of the statement, saying, "A declaration as to what one person intended to do ... cannot safely be accepted as evidence of what another probably did." Id. at 189, 148 P.2d 627.

In sum, the traditional hearsay dangers of fabrication, faulty memory, and incorrect narration are implicated by the use of such an unavailable declarant's statement about meeting a criminal suspect. Moreover, since this manner of application could be extended to a broad range of statements, it effectively undermines the hearsay rule. Rather, application of the state of mind exception should be reserved for statements of intention offered to establish that a declarant acted in conformity therewith, not that a third party acted in conformity therewith. In other words, allowing Mr. Snyder's conversation that the victim stated he planned to meet Mr. Ebo would be a wait to circumvent the hearsay rules and effectively allow the Commonwealth to rely on the statement to show that Mr. Ebo was meeting the victim, thus placing him at the scene of the crime. Accordingly, Defendant respectfully requests this Court to deny the Commonwealth's motion and, instead, to hold that the challenged statement is inadmissible under hearsay rules.

Respectfully Submitted,

Wendy L. Williams

**CERTIFICATE OF SERVICE**

I, Wendy L. Williams, hereby certify that a true and correct copy of the within Defendant's Response to Commonwealth's Motion in Limine Filed May 25, 2012 and was served in the manner indicated, this 8th day of June, 2012 upon the following:

The Honorable Beth Lazzara
509 Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA 15219
Via Hand-Delivery

DDA Steven Stadtmiller
c/o Allegheny County District Attorney's Office
401 Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA 15219
Via Hand-Delivery

Helen Lynch, Court Administrator
Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA 15219
Via Hand Delivery

Mr. Randall McKinney
rhm@randallmckinneylaw.com
Via Email

Mr. Thaddeus Thomas Crumbley, DOC#: 69038, Pod: 8D
c/o Allegheny County Jail
950 2nd Avenue
Pittsburgh, PA 15219
Via U.S. Mail

Wendy L. Williams