

FILED
2012 AUG 21  AM 8: 54

DEPT OF COURT RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY PA

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,    CRIMINAL DIVISION

v.                               CC No.: 2012 02820

THADDEUS THOMAS CRUMBLEY,        THE HONORABLE BETH LAZZARA
         Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS IDENTIFICATION**

Filed on Behalf of Defendant:

Thaddeus Thomas Crumbley

Counsel of Record for this Party:

Wendy L. Williams
PA ID# 50379

Wendy L. Williams & Associates
The Frick Building, Suite 417
437 Grant Street
Pittsburgh, PA 15219

(412) 434-5757
(412) 434-5787 facsimile
wendy.williams.law@gmail.com

Respondents' Exhibit 43                                    0241

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,    CRIMINAL DIVISION

v.                               CC No.: 2012 02820

THADDEUS THOMAS CRUMBLEY,        THE HONORABLE BETH LAZZARA
         Defendant.

### DEFENDANT'S REPLY TO COMMONWEALTH'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS IDENTIFICATION

Defendant previously filed a Motion in Limine to preclude admission of testimony by a witness, Saday Robinson, who now claims to be able to identify Defendant as a perpetrator of the crimes herein. However, it was not until fourteen months after the crime and several failed attempts at picking Defendant out of photo arrays that Ms. Robinson finally was able to point to Defendant as the perpetrator. There was an inaccurate description of both of Defendants, specifically as to Defendant Crumbley's skin color, height, and weight and there is no independent basis. In addition, there had been multiple news broadcasts with photographs and print media with photographs prior to the point Ms. Robinson finally was able to identify Defendant.

Defendant asserts that these conditions indicate that the identification procedure was impermissibly suggestive requiring suppression of her testimony evidence at trial. Rather, no evidence indicates that Ms. Robinson's purported ability to now identify Defendant has any independent basis in this case and that the faultiness of her recollection is exemplified by the fact that she repeatedly was unable to pick out Defendant in photo arrays at points much closer temporally to the crime being prosecuted herein and there was a completely inaccurate physical description.

Respondents' Exhibit 43                                              0242

Ms. Robinson was only able to identify Defendant fourteen months later, after the he was arrested and repeatedly broadcast and printed in regional media, such as the Post-Gazette (December 15, 2011) with his name and photograph, on WTAE with name (December 15, 2011), on WPXI with name (December 15, 2011), in All Voices with name (December 15, 2011), in the Tribune Review (December 16, 2011), and in the World News with name (December 16, 2011), in connection with this case. Additionally, Defendant's name and photograph was shown in connection with the June 2, 2011 in CBS Local/KDKA on June 2, 2011 in a shooting in which he was a victim and was critically injured. In all of these cases, the referenced media coverage is forever preserved on the Internet and can be accessed through search engines such as Google.

Several Pennsylvania cases speak directly to the issues raised here and emphasize the lack of reliability of an identification made after media broadcasts along with failed identifications in a photo array. For instance, in Commonwealth v. Carter, 643 A.2d 61 (Pa. 1994) a defendant, convicted of murder, appealed and argued that the trial court erroneously refused to suppress the in-court identification by the victim, whose recognition of him arguably was tainted by her review of a newspaper article containing his picture two days after the murders. The court recognized that "identifications made only after a witness has seen the defendant in the media might prove to be suggestive." Id. at 253 (emphasis added). Accordingly, it found the victim's positive identification of the appellant after seeing his picture in the newspaper an "impermissible suggestive identification." It explained that:

> The problem with an impermissible suggestive identification is the potential for misidentification, resulting in a due process violation if that identification is admitted at trial. Commonwealth v. Silver, 452 A.2d 1328 (Pa. 1982); Commonwealth v. McGaghey, 507 A.2d 357 (Pa. 1986). Following a suggestive pre-trial identification, a witness will not be permitted to make an in-court identification unless the prosecution establishes by clear and convincing evidence that the identification was not induced by events occurring between the time of the crime and the in-court identification. Commonwealth v. Rodgers, 372 A.2d 771 (Pa. 1977). Thus, an in-court identification following a suggestive

Respondents' Exhibit 43                                              0243

out of court identification will be admissible only if, considering the totality of the circumstances, it is determined that the in-court identification had an origin sufficiently distinguishable to be purged of the primary taint. Commonwealth v. Glover, 412 A.2d 855 (Pa. 1980)(quoting United States v. Wade, 388 U.S. 218 (1967)).

Likewise, here, Defendant asserts that any in-court identification by Ms. Robinson will have been tainted by the media exposure to this case.

Following a suggestive pre-trial identification procedure, a witness should not be permitted to make an in court identification unless the prosecution establishes by clear and convincing evidence that the totality of the circumstances affecting the witness' identification did not involve a substantial likelihood of misidentification. Neil v. Biggers, 409 U.S. 188 (1972); Simmons v. United States, 390 U.S. 377 (1968); United States v. Wade, 388 U.S. 218 (1967); United States ex rel. Thomas v. State of New Jersey, 472 F.2d 735 (3d Cir. 1973); United States v. Holiday, 457 F.2d 912 (3d Cir. 1972).

The question then becomes: does Robinson have an independent basis (outside the media exposure) for her present and arguable ability to identify the Defendant? The Carter court explained that:

> In determining whether an independent basis for identification exists, we must consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Commonwealth v. James, 486 A.2d 376 (Pa. 1985). Our scope of review limits our consideration to a determination of whether sufficient evidence has been presented to support the independent basis for the in-court identification. Commonwealth v. Davis, 421 A.2d 179 (Pa. 1980).

Id. Upon reviewing the record in light of these factors, the Carter court held that the victim had sufficient independent basis for her in-court identification to purge the taint of the suggestive pre-trial identification. It found that she had ample opportunity to view the appellant at the crime scene. The attack lasted "minutes" giving her sufficient time to view and identify the appellant.

Respondents' Exhibit 43                                        0244

She was only a few feet away when she had the opportunity to view the defendant's face from the passenger seat. She also gave accurate and consistent descriptions of the defendant to the police immediately after the attack. These descriptions were consistent with her in-court identification. Her inability to identify her assailant the day after the attack from a photographic line-up was explained by the fact that she was preparing to go to surgery and was under the influence of medication. The court thus concluded that the victim did indeed "crystalize" her identification of the appellant as a result of the assault and not as a result of the newspaper photograph. See Commonwealth v. James, 486 A.2d at 380.

In marked contrast, Ms. Robinson failed to give to police a description of the assailant right after the incident that matched the description of Defendant. In addition, she had only a short time to see the shooter at the time of the homicide. Most importantly, unlike the witness in Carter, who explained her inability to pick the defendant out of a photo array on her heavy medication in preparation of surgery, Ms. Robinson has provided no excuse for her inability to identify Defendant until fourteen months after the crime. The explanation now given by the Commonwealth (that she was fearful) is not documented or even hinted at in the supplemental reports written by the case constable, Detective Michael Garlicki, who did the original photo arrays with Ms. Robinson. Hence, this Honorable Court cannot conclude that the victim did indeed "crystalize" her identification of the Defendant as a result of the assault and reliable, timely, observations, and not as a result of the media coverage and unreliable factors.

Likewise in Commonwealth v. Porter, 569 A.2d 942, cert. denied, 498 U.S. 925 (Pa. 1990), the defendant, convicted of murder and robbery, argued on appeal that a witness' identification was tainted by her failure to identify him in a photo array shown six days after the robbery-murder. The witness only identified the defendant when his picture appeared on a

Respondents' Exhibit 43                                                                                      0245

television news broadcast. Faced with the inconsistency, the witness testified she was afraid to identify previously and that she saw, but did not hear the television report that the defendant had been arrested. Note that here, Ms. Robinson has made no claim that she did not see any news coverage of this homicide Counsel for Defendant was prevented from interviewing or asking the witness about the basis for her identification by the Commonwealth at the identification when she was willing to speak to Counsel for the Defendant.

The Porter court wrote that even if pretrial procedures might prove suggestive, the witness' identification had sufficient independent basis. She saw the defendant in good lighting inside and outside the shop and gave the police a description on the scene that fit his description. She positively identified him at both the preliminary hearing and at trial. The trial judge weighed her testimony of her fear, her opportunity to see and know of whom she spoke and properly decided to admit her evidence. In marked contrast, herein, no evidence has been submitted that Ms. Robinson had a good view of the shooter or that she gave police an accurate description of the assailant after the homicide. In fact, photographs of the scene indicate otherwise.

In the same vein, in Commonwealth v. Steward, 775 A.2d 819 (2001), the defendant, appealing from a murder conviction, challenged the victim's identification of him. A husband and wife had been asleep in their bedroom when they were awakened by two intruders. One killed the husband and the other forced the wife to give him the rings she was wearing. They then fled the house. On appeal, the defendant contended that the trial court erred in failing to suppress the wife's in-court identification of the defendant and allowing her to identify the defendant at the time of trial. The defendant maintained that the wife's identification of the defendant at the pretrial lineup and in court at the time of trial was the product of an improperly suggestive factor, namely the fact that the wife had seen pictures of the defendant in two

Respondents' Exhibit 43                                                                                    0246

newspaper articles after the defendant had been arrested. The defendant noted that the wife did not previously select the defendant's picture from a photographic array shown to her even though it included a picture of the defendant.

However, the court found that the victim had several minutes during the robbery to observe her assailant, the room they were in was brightly lit, and the wife testified that she made every effort to try to remember anything that she could. Moreover, prior to the police lineup, which took place approximately six weeks after the burglary and shooting of her husband, the wife candidly acknowledged to one of the investigating detectives that she had seen pictures in the newspaper of the two people who had been arrested for this offense. She told the detective that she saw one of the gentlemen clearly during the incident but that she did not get a look at the other person. She asked the detective whether it would be permissible to identify the other individual based on the newspaper picture. The detective instructed her to only identify the individual based on her recollection of the incident. The wife then proceeded to pick the defendant out of the lineup. She, however, declined to identify the other individual who participated in the attack, even though the individual was presented in a second lineup, because she admitted that she did not see him clearly during the attack. Thus, she believed that any identification would have been based solely on her viewing of his picture in the newspaper.

The court explained that the defense counsel skillfully and effectively cross-examined the wife during the suppression hearing, but she did not waiver in her assertion that the only basis for her identification of the defendant was the fact that she had seen him clearly on the evening of the attack. The wife consistently maintained that the only reason that she selected the defendant from the lineup as the individual who was with her in the bathroom during the incident was her close personal observation of him during the incident.

Respondents' Exhibit 43                                        0247

The court concluded that the identification by the wife was based upon her opportunity to observe the assailant while in her bedroom and was made from an independent recollection. The identification was reliable and not tainted by any improper suggestivity. Her identification of the defendant had an origin independent of the newspaper photographs, namely her opportunity to observe the defendant in the brightly lit bathroom for two minutes while she was in close proximity to him. Although she initially could not identify the defendant from the photographic array, that was deemed quite likely due to the five year old age of the picture and not due to any defect in her ability to accurately recall the incident.

This case makes clear the types of evidence needed to rebut a claim that pretrial media exposure unduly taints a subsequent identification, made after prior failed attempts at identifying the suspect. In Steward, the victim had several minutes during the robbery in a well-lit room to observe her assailant, and she testified that she made every effort to try to remember anything that she could. Here, though, no evidence indicates that Ms. Robinson had ideal conditions under which to observe the shooter she identifies as this Defendant and has made no indication that she consciously attempted to remember details about the assailant and there is no reasonable explanation for her inaccurate physical descriptions at the time of the incident of both Defendants.

In Steward, the wife acknowledged that she had seen pictures in the newspaper of the two people who had been arrested for this offense and specifically identified the defendant based only on her view of him at the crime scene. No indication has been made by Ms. Robinson that she could do the same.

In Steward, the victim repeatedly asserted, even under cross-examination, that the only basis for her identification of the defendant was the fact that she had seen him clearly on the

Respondents' Exhibit 43                                                             0248

evening of the attack, and not from media exposure. Ms. Robinson has provided no similar guarantee to this Court, or interviewers for the Commonwealth.

In Steward, the original photographic array included a photograph of the defendant that was five years old, explaining the witness' inability to pick it out. No such rationale for Robinson's fourteen month inability to identify Defendant has been provided here.

Case law is clear that if a pre-trial identification is inadmissible, either because the accused was denied counsel or because of suggestiveness, an ensuing in-court identification is also inadmissible unless it can be shown to be based on a source independent of, and not tainted by, the pretrial identification. Commonwealth v. Spencer, 275 A.2d 299 (Pa. 1971). The Commonwealth simply has failed to provide sufficient evidence showing that Robinson's current purported ability to identify Defendant is independent of the media exposure in this case or showing that Robinson's previous and repeated failures at identifying Defendant in photo arrays is easily explained.

The Commonwealth has cited Commonwealth v. Washington, 927 A.2d 586 (Pa. Super. 2007) in support of its argument. In that case, a customer at the store the defendant arguably robbed was unable to identify the defendant at a subsequent line-up, but at trial she positively identified the defendant as the man who had pointed a gun at her and ordered her not to leave the store. The defendant asserted that her failure to identify him at a pre-trial line-up rendered her in-court identification suggestive and that courtroom confrontations create a substantial risk of misidentification. The court disagreed. It reasoned that the victim's inability to identify the defendant at the line-up did not affect the admissibility of her in-court identification, but only its weight and credibility. It added that although the victim did not identify the defendant in the police line-up, there was no indication in the record, nor does the defendant allege, that the

Respondents' Exhibit 43                                                                 0249

police identified the defendant to the victim or engaged in any other suggestive behavior at any time. Thus, there was no need to provide an independent basis for the witness' in-court identification. Regardless, the court added that the Commonwealth elicited an independent basis for the witness' identification of the defendant, as she testified that she had a good opportunity to view the defendant, where lighting conditions were "nice and bright," and she saw the defendant face-to-face from ten feet away for about twenty minutes. Hence, the appellate court ruled that the trial court properly denied a motion to suppress the witness' testimony.

The Washington case did not involve the threat of media exposure tainting a subsequent identification, as is true in this case. The Washington case did not involve a fourteen month inability to identify a suspect, as is true in this case. The Washington case did involve a crime scene conducive to accurate observations by eyewitnesses, unlike that situation at bar.

Reliability is the linchpin in determining the admissibility of an identification such as the one challenged herein. Manson v. Brathwaite, 432 U.S. 98 (1977). Ms. Robinson's identification of Defendant as the purported offender in this case is not imbued with sufficient reliability so as to allow admission of this evidence. Rather, this identification was not the independent result of her observations at the scene of the crime, an assertion supported by the fact that she was unable to positively identify Defendant or his Co-Defendant in various photo arrays for fourteen months. In addition, even on the date July 24, 2012, of the last photo array, the Commonwealth still showed a third photo array with Asa Thompkins as the target suspect, who was arrested with a firearm identified as being a murder weapon in this case. Mr. Thompkins, was and obviously remains a suspect in this case, which clearly means the Commonwealth is not sure the witness has accurately identified the actors in this case.

Respondents' Exhibit 43    0250

Under these circumstances, Defendant respectfully requests this Court to preclude admission of Robinson's identification testimony proposed by the Commonwealth.

Respectfully Submitted,

_Wendy A. Williams/amo_
Wendy L. Williams

Respondents' Exhibit 43                0251

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Memorandum of Law in Support of Defendant's Motion to Suppress Identification was served on the 20th day of August, 2012 in the manner indicated to:

The Honorable Beth Lazzara
Allegheny County Courthouse, 510
436 Grant Street
Pittsburgh, PA 15219
Via Hand Delivery

DDA Steven Stadtmiller
Allegheny County District Attorney's Office
401 Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA 15219
sstadtmiller@da.allegheny.pa.us
Via Hand Delivery

Court Administrator – Helen Lynch
307 Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA 15219
Via Hand Delivery

Mr. Randall McKinney
429 Forbes Avenue, Suite 1400
Pittsburgh, PA 15219
rhm@randallmckinneylaw.com
Via Hand Delivery

Mr. Thaddeus Thomas Crumbley, DOC# 69038, Pod: 8D
c/o Allegheny County Jail
950 2nd Avenue
Pittsburgh, PA 15219
Via Hand Delivery

_Wendy L. Williams/cmo_
Wendy L. Williams